UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LINDA DERRYBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-CV-3 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Linda Derryberry's ("Derryberry") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq.

### I.  Background

On February 18, 2013, Derryberry protectively filed applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 214-218), and for SSI benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. (Tr. 206-213). In both applications, she alleged disability beginning June 9, 2009, due to, inter alia, back pain, chronic migraines, asthma, and depression (Tr. 206, 214, 235). The Social Security Administration ("SSA") denied Derryberry's claims on April 29, 2013 (Tr. 149-153). Derryberry filed a timely

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

request for a hearing before an administrative law judge ("ALJ") on June 10, 2013 (Tr. 156). After a hearing held on May 7, 2014 (Tr. 96-121), the ALJ issued a written decision on August 19, 2014, upholding the denial of benefits (Tr. 77-95). Derryberry requested review of the ALJ's decision by the Appeals Council (Tr. 75-76). On November 6, 2015, the Appeals Council denied her request for review (Tr. 1-7). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Derryberry filed this appeal on January 7, 2016 (Doc. 1). The Commissioner filed an Answer (Doc. 9). Derryberry filed a Brief in Support of her Complaint (Doc. 11), and the Commissioner filed a Brief in Support of the Answer (Doc. 18). Derryberry did not file a Reply Brief.

## II. Decision of the ALJ

The ALJ determined that Derryberry met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful employment since June 9, 2009, the alleged onset date of disability (Tr. 82). As relevant to this appeal, the ALJ determined that Derryberry had the severe impairments of asthma, lumbar degenerative disc disease, cervical osteoarthritis, and migraines; but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 82-85). Notably, the ALJ determined that Derryberry's depression and anxiety were not severe impairments, as they did not cause more than a minimal effect on her ability to perform basic work activities (Tr. 83-84).

After considering the entire record, the ALJ determined Derryberry had the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967. More specifically, the ALJ found that Derryberry had the

following limitations: can stand and walk 2 hours per day but at times may have to limit her standing and walking to 30 minutes at a time; can sit 6 hours per day but at times may be limited to sitting for 30 minutes and have to get up for a short time and then sit back down; can lift 10 pounds occasionally and less than 10 pounds frequently; can occasionally bend, stoop, crouch, squat, kneel, and crawl; should avoid climbing ladders or working at heights or around hazardous unprotected moving equipment; needs to avoid extreme temperature, humidity, dust, fumes, poor ventilation, and vibrations; and at times, due to symptoms from physical impairments, may be limited to a simple routine or simple repetitive tasks and could not sustain a higher level of concentration such as work requiring sustained attention to detail (Tr. 85-89). The ALJ specifically noted that, although he was not persuaded by Derryberry's statements regarding the frequency and severity of her migraines, he would nevertheless give her the "benefit of the doubt," and include in the RFC a limitation to only simple routine or simple repetitive tasks and a limitation on higher levels of concentration to account for possible distractions caused by her migraines (Tr. 88).

The ALJ found Derryberry unable to perform any past relevant work; however, based on her age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Derryberry can perform, including final assembler and table worker (Tr. 89-90). Thus, the ALJ concluded that Derryberry had not been under a disability from the alleged onset date of June 9, 2009 through the date of his decision, August 19, 2014 (Tr. 91).

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

3

The ALJ held a hearing in this matter on May 7, 2014. The ALJ heard testimony from Derryberry, and George Horne, M.S., a vocational expert.

1. **Derryberry's testimony**

Derryberry was 46 years old at the time of the hearing and living with her 14-year-old and 16-year-old sons (Tr. 100). She completed high school, and has a driver's license (Tr. 100, 107). She testified that she has not worked since 2009, when she quit her job as a driver for a meal-delivery service because exposure to her clients' cigarette smoke caused her to have asthma attacks (Tr. 100-102).

It was Derryberry's testimony that, due to her back pain, she could not lift more than 15 pounds, she had difficulty standing for long periods of time, she can stand for no more than 10 minutes before needing to sit down, she cannot finish washing a full sink of dishes, and she has difficulty cooking (Tr. 103-104). When her back hurts, Derryberry sits down and puts her feet up; when she has migraines, she lies down (Tr. 104). Derryberry does grocery shopping with her husband, but she becomes sore afterward (Tr. 106). When she is able, the goes to church and sings (Tr. 107, 112). She sometimes misses church because of migraines or pain (Tr. 107).

Derryberry testified that she does household chores "at [her] own pace." (Tr. 111). She does not vacuum or mop because of her back pain (Id.). She is able to dust, but wears a mask on her doctor's advice (Id.). She cannot mow the lawn, but she and her husband planted a garden with 30 tomato plants (Tr. 111-112). She likes to read, and has "been getting out in the evening and walking around" (Tr. 112). Derryberry likes to fish and camp, but has missed out on a few trips because of her asthma and back pain (Tr. 114-115).

Derryberry also testified that she takes Topamax for migraines, that her headaches had decreased in intensity and frequency since she started taking the medication, but that they had

4

"started in again" in the prior few months (Tr. 105, 110). She testified that she had "probably had three [migraines]" during the week of the hearing (Tr. 105). Derryberry also testified that she had quit jobs in the past because her migraines "got to the point where [she] just couldn't take it anymore." (Id.).

Derryberry also testified that she takes medications for depression, and that the medications have helped (Tr. 108-109). She reported having fewer days where it is hard for her to get motivated to get out of bed, that she sometimes feels helpless and hopeless at night, and that she has periods of tearfulness (Id.). Derryberry testified that she sleeps approximately 6 hours per night (Tr. 109).

**2. Testimony of Vocational Expert**

For the first hypothetical, the ALJ asked Mr. Horne, a vocational expert, to assume an individual of the claimant's age, education, and work history who is limited to "needing to sit for some time during the [day] with her feet elevated to the level of the waist and for as much as three times a week needs to lie down because of headaches. The person will be unable to stand for more than ten minutes at a time." (Tr. 117). Mr. Horne opined that there would be no full-time, competitive employment available for such a person (Id.). For the second hypothetical, the ALJ asked Mr. Horne to assume the individual was limited to sitting less than two hours per day and standing less than two hours per day; Mr. Horne opined that there would not be any full-time work for such a person (Tr. 117-118). The ALJ then posed the following third hypothetical:

> [T]he hypothetical person is able to stand and walk two hours a day. At times may have to limit standing and walking to 30 minutes at a time. Sitting six hours a day. At times, the person can be limited to 30 minutes and will have to get up a couple of times and sit back down. The person can lift ten pounds occasionally and less than frequently. The person can occasionally stand, stoop, crouch, squat, kneel, and crawl. The person should avoid climbing ladders or working at heights or working around hazardous, unprotected, moving equipment. Would need to avoid extreme temperature should it be dust, fumes, poor ventilation or vibration.

5

(Tr. 118). Mr. Horne opined that such a person would be limited to sedentary, unskilled work, such as a final assembler, DOT No. 713.687-018, with approximately 900 jobs locally and 40,000 nationally; or table worker, DOT No. 739.687-182, with approximately 500 jobs locally, and 28,000 nationally (Id.). The ALJ then added that, at times, the person from the third hypothetical would be limited to performing just simple, routine, repetitive tasks and could not sustain any higher level of concentration such as work requiring attention to detail. Mr. Horne responded that such a limitation would not change his response to the third hypothetical (Tr. 118-119). Counsel asked Mr. Horne whether the person in the hypothetical could sustain any competitive employment if she were absent from her job at least once per month on a regular and consistent basis; Mr. Horne responded in the negative (Tr. 119).

### B. Medical Records

The ALJ summarized Derryberry's medical records at Tr. 83-89. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

6

exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to

her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Andrews v. Colvin, 791 F.3d 978, 983 (8th Cir. 2015); Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the

Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Derryberry argues (1) that the ALJ erred by concluding that her depression and anxiety were not severe impairments; (2) that the ALJ erred by failing to include sufficient limitations to account for her severe migraines when assessing her RFC; and (3) that the ALJ's credibility analysis was not supported by substantial evidence (Doc. 11). In response, the Commissioner urges affirmance of the ALJ's denial of benefits, asserting that the ALJ properly evaluated the severity of Derryberry's mental impairments, that substantial evidence supports the ALJ's findings of fact, that Derryberry has not shown that her migraines cause greater limitations than those found by the ALJ, and that the ALJ properly discounted Derryberry's subjective statements (Doc. 18).

A. Derryberry's Depression and Anxiety

9

The ALJ found that Derryberry's depression and anxiety, considered singly and together, did not cause more than a minimal limitation in Derryberry's ability to perform basic mental work activities, and thus concluded that they were not severe impairments (Tr. 83). In support of his conclusion, the ALJ noted that Derryberry's primary care provider treated her mental impairments, that she had not been treated by a psychiatrist, that she did not participate in counseling with a therapist or psychologist, and that she had no history of psychiatric hospitalizations. The ALJ further noted that Derryberry's objective mental status examinations had shown few abnormalities, as her healthcare providers had repeatedly observed intact recent and remote memory; normal behavior, judgment and thought content; spontaneous, logical, and goal-directed speech with a normal rate, volume, and coherence; intact associations and fund of knowledge; and a normal attention span and ability to concentrate (Id. (citing Tr. 289, 300-301, 313, 322, 324, 328, 332, 338, 353, 419, 466, 491, 520, 554, 614, 683, 688, 696, 737, 759, 785, 810, 820, 862). The ALJ gave little weight to a report authored by a psychologist who had reviewed the evidence and opined that Derryberry had no medically determinable mental impairments, and also gave little weight to a report from an unknown source that was submitted with Derryberry's application for Medicare benefits (Id.).

The ALJ then stated that he had considered the four broad "Paragraph B" functioning criteria (Id.). First, the ALJ explained that, while Derryberry reported periods of tearfulness, she had also indicated that she gets her sons up for school and takes them to the bus stop each morning; does household chores, including dishes, laundry, dusting, sweeping, and ironing; prepares family meals; drives; shops for groceries; manages her own finances; reads; does jigsaw puzzles; sings at her church; goes camping and fishing; maintains a vegetable garden with 30

10

tomato plants; is able to finish what she starts; and does not have problems getting along well with others (Id. at 83-84 (citing Tr. 244-48, 286, 745, 784)).

In reaching his conclusion as to Derryberry's ability to perform daily activities, the ALJ cited to an April 17, 2013 Adult Functional Report, in which Derryberry indicated the following. On a typical day, she wakes up at 6:15 in the morning. She gets her sons ready for school, takes them to the bus stop, returns home, and goes back to sleep for an hour or two. When she wakes up, she prays, reads her Bible, gets dressed, and eats breakfast. She does housework, including unloading the dishwasher, laundry, ironing, making her bed, dusting (with a mask), and cleaning; but takes breaks between each task because her arms and legs get weak and her back hurts. She cannot mop because of her back pain, and her husband and sons help her with household chores. She also cooks meals daily with help from her husband (Tr. 244-251).

The ALJ also cited to a report of a September 26, 2012 office visit during which Derryberry reported, inter alia, that she liked to sing, read her Bible, walk, fish, and spend time with her family (Tr. 286); and a June 21, 2014 report which Dr. Stephen Williamson indicated that Derryberry's typical day consisted of eating, doing laundry, doing therapy, resting, watching television, reading, helping with housework, and cooking (Tr. 784).

Upon considering all the evidence of record, the ALJ determined that Derryberry had only a mild limitation in the first three paragraph B criteria, i.e., activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 84). The ALJ further concluded that Derryberry had experienced no episodes of decompensation of extended duration. The ALJ therefore concluded that Derryberry's depression and anxiety had no more than a minimal effect on her ability to perform work activities, and thus that they were non-severe (Id.).

11

On appeal, Derryberry argues that the ALJ failed to properly consider her depression and anxiety by rejecting and mischaracterizing medical assessments and treatment notes from Derryberry's treatment providers, by improperly relying on his own inferences, and by failing to consider a January 2014 mental health evaluation by Dr. Bridget Hurt (Doc. 11 at 3-6). In response, the Commissioner argues that the ALJ properly found that Derryberry's mental impairments are not severe (Doc. 18 at 4-11).

A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). At step two, an ALJ may determine that an alleged impairment is not severe only when it "would have no more than a minimal impact on the claimant's ability to work. Page, 484 F.3d at 1043 (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). Under the regulations, the ALJ must evaluate the severity of mental impairments by gauging their impact on four broad functional areas known as the "paragraph B" criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3). The regulations further provide that if the ALJ rates the claimant's limitations as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will generally conclude that the claimant's mental impairments are not severe, unless the evidence indicates that there is more than a minimal limitation in the claimant's ability to perform basic work activities. See 20 C.F.R. § 404.1520a(d)(1); see also Buckner v. Astrue, 646 F.3d 549, 556-57 (8th Cir. 2011).

The Court concludes that substantial evidence supports the ALJ's determination that Derryberry's depression and anxiety are not severe impairments. See Pate–Fires, 564 F.3d at 942. First, the record supports the ALJ's conclusions that Derryberry's mental impairments were

treated by medications prescribed by her primary care provider, that she had not required specialized management of her medications by a psychiatrist, that she did not participate in counseling, and that she had not been hospitalized for psychiatric treatment. See Kirby v. Astrue, 500 F.3d 705, 708-09 (8th Cir. 2007) (ALJ did not err in finding claimant's mental impairments were not severe where, inter alia, the claimant had not been formally treated by a psychiatrist, psychologist, or other mental health professional over time); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (citing Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)) (if an impairment can be controlled through treatment or medication, it cannot be considered disabling). Second, the ALJ properly noted that Derryberry's objective mental status examinations had shown few mental or psychological abnormalities. See Buckner, 646 F.3d at 557 (claimant's history of normal psychological examinations supported ALJ's finding that claimant's mental impairments were not severe). Third, the ALJ properly considered the "paragraph B" criteria. As to Derryberry's activities of daily living, the ALJ correctly relied on the record evidence to conclude that she was able to get her sons ready for school; take them to the bus stop; perform many household chores, including washing dishes, doing laundry, dusting and ironing; drive a car; shop; manage her own finances; read; fish; camp; and garden. See 20 C.F.R. § 404.1520a(c)(3) (ALJ must consider claimant's activities of daily living when evaluating the severity of her mental impairments). The ALJ further noted that Derryberry is able to finish what she starts and does not have any problems getting along with others. Id. (ALJ must also consider claimant's social function and concentration, persistence, and pace). As such, there is substantial evidence to support the ALJ's conclusion that Derryberry's medically determinable mental impairments were non-severe, as they caused no more than "mild limitation" in any of the first three paragraph B criteria, and she had no episodes of decompensation of extended duration.

13

See Page, 484 F.3d at 1043. The Court thus concludes that the ALJ did not err in finding that Derryberry's anxiety and depression were not severe.

Derryberry also contends that the ALJ did not adequately consider Dr. Hurt's January 17, 2014 mental health evaluation, in which Dr. Hurt noted that Derryberry was "distinctly dysphoric," had an anxious affect and depressed mood, and became tearful despite her best efforts to smile. During the evaluation, Derryberry reported insomnia, panic-like episodes, generalized anxiety, a history of passive suicidal thoughts, and feelings of helplessness, hopelessness, and worthlessness; she denied any significant social anxiety. Derryberry made fair eye contact, was friendly and cooperative, was a reliable reporter, and exhibited spontaneous, logical, and goal-directed speech with no irregularities in rhythm or rate. Dr. Hurt diagnosed depression and anxiety, and recommended that Derryberry consult a psychiatrist regarding her medication regimen. Dr. Hurt did not offer any opinion as to whether Derryberry's anxiety and depression would have more than a minimal impact on her ability to work (Tr. 675-679).

The Court concludes that, while the ALJ's consideration of Dr. Hurt's evaluation was succinct, accounting for only one sentence of the ALJ's opinion, the ALJ gave adequate attention to the report, and instead gave greater weight to Derryberry's history of near normal objective mental status examinations as observed by her healthcare providers over time. As noted by the ALJ, Derryberry's treatment providers repeatedly observed intact recent and remote memory; normal behavior, judgment and thought content; spontaneous, logical, and goal-directed speech with a normal rate, volume, and coherence; intact associations and fund of knowledge; and a normal attention span and ability to concentrate. See Buckner, 646 F.3d at 557. The Court further notes that any error in the ALJ's decision not to discuss Dr. Hurt's evaluation more extensively was harmless, as Dr. Hurt's observations and conclusions are largely consistent with the

observations of Derryberry's treatment providers. See Andrews, 791 F.3d at 983 (the Court must consider evidence that both supports and detracts from the ALJ's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently). For these reasons, the Court concludes that substantial evidence supports the ALJ's determination that Derryberry's anxiety and depression were not severe impairments.

B. Accounting for Derryberry's Migraines in the RFC

The ALJ found that Derryberry's testimony regarding the severity and frequency of her migraines was not credible, as the evidence of record did not support it (Tr. 88). Specifically, the ALJ noted that Derryberry's headaches had been managed with Topamax prescribed by her primary care provider without any need for frequent dosage changes or type of medication (Id.). The ALJ further noted that Derryberry had not been treated by a neurologist for her migraines, nor had she frequented the emergency room because of them. Citing the lack of aggressive treatment for her migraines, i.e., occipital nerve blocks or Botox injections, the ALJ determined that the medical evidence did not support Derryberry's allegation of disabling migraines (Id.). The ALJ also noted that, notwithstanding his decision to discredit Derryberry's statements regarding the severity and frequency of her migraines, he would nevertheless give her "the benefit of the doubt," and include a limitation that she can only perform "simple routine and simple repetitive tasks to allow for possible distractions from pain related to her headaches and her other impairments." The ALJ determined that the objective evidence of record did not support a finding that Derryberry had any greater limitations due to her migraines (Id.).

On appeal, Derryberry argues that the ALJ mischaracterized the extent to which her migraines improved with treatment, citing her medical records as evidence that she still has

15

frequent headaches; and that the ALJ thus failed to account for limitations attributable to her headaches when assessing her RFC (Doc. 14 at 7-8). In response, the Commissioner asserts that the ALJ's RFC assessment properly accounted for Derryberry's headaches, and that Derryberry has failed to show that her migraines caused her any additional limitations than those found by the ALJ (Doc. 18 at 11-13).

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Voegtlin v. Colvin, No. 4:11CV1980 HEA, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

The Court concludes that the ALJ properly accounted for Derryberry's headaches when assessing her RFC limitations. Notably, the ALJ explicitly stated that, although the objective medical evidence did not support Derryberry's subjective descriptions of the severity and frequency of her headaches, he would nevertheless include a limitation in the RFC that restricted her to simple, routine and repetitive tasks to allow for possible distractions from pain caused by her headaches. See Polaski, 739 F.2d at 1322. Moreover, citing to the objective medical

evidence, the ALJ found that Derryberry's migraines had been managed by medications prescribed by her primary care provider, and that they had not necessitated aggressive or specialized treatment. See id.

The Court further concludes that the ALJ did not mischaracterize the extent to which Derryberry's migraines had been controlled by medication. Rather, the ALJ accurately observed that Derryberry's primary care provider prescribed her Topamax, that she had not required frequent changes in the dosage or type of migraine medication, that she does not have a treatment relationship with a neurologist, and that her physician has not recommended more aggressive treatments. Derryberry cites to treatment records in support of her assertion that she still has frequent migraines; however, those same records tend to support the ALJ's decision to discredit Derryberry's allegations regarding the severity and frequency of her headaches. For example, on June 21, 2014, Derryberry reported to Dr. Williamson that she was experiencing migraine pain at least 2 to 3 times per week, that her migraines lasted 2 days, that the pain intensity was 10 out of 10 when she had a headache, that medication and rest helped her migraines, that fatigue made them worse, and that they would cause her to miss work (Tr. 781). During a June 23, 2014 follow-up appointment for her sleep apnea, Derryberry reported to Dr. Gwin that she suffered from "terrible headaches" and that she was unable to use her CPAP machine when she had headaches; Dr. Gwin noted however that Derryberry had used her CPAP 55 of the previous 60 days, averaging more than seven hours of use per night (Tr. 812). During a July 8, 2014 evaluation for migraines, Derryberry reported to Dr. Cooper that she was having headaches 2 to 3 times per week (Tr. 806). Although Derryberry reported to her treatment providers that she was experiencing headaches between 4 and 6 days per week, her CPAP machine—which she claimed she was unable to use on days she had migraines—showed that,

17

during the same time period, she had used it 55 of 60 days. The Court thus concludes that, in light of her physician's conservative course of treatment and the ALJ's well-reasoned decision to discredit her subjective descriptions of the severity and frequency of her headaches, the ALJ did not mischaracterize the extent to which Derryberry's headaches are controlled by medication. Thus, the Court concludes that substantial evidence supports the ALJ's RFC assessment in light of Derryberry's migraines. See Pate–Fires, 564 F.3d at 942.

C. The ALJ's Credibility Determination

Derryberry argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ's decision contained only a short analysis concluding that her treatment records did not support her alleged limitations, that she had only a limited work history, and that she was able to complete basic daily activities. In response, the Commissioner contends that the ALJ properly discounted Derryberry's credibility.

In evaluating a claimant's credibility, an ALJ must apply the factors from Polaski, 739 F.2d at 1322, which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings,

so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).

Here, the ALJ identified several reasons for discounting Derryberry's credibility. First, as discussed above, the ALJ determined that Derryberry's medical treatment records did not support her allegations regarding her mental impairments and the severity and frequency of her migraines. See Polaski, 739 F.2d at 1322 (an ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole). Similarly, the ALJ discounted Derryberry's reports of disabling back pain because they too lacked support in her medical records. Specifically, the ALJ noted that, although an MRI had revealed degenerative disc disease and a disc protrusion abutting her L5 and S1 nerve roots, her physician had found no significant central lateral recess or foraminal stenosis and no indication of nerve root impingement; an x-ray of her thoracic spine was completely normal; and an x-ray of her cervical spine showed only minimal osteoarthritis. The ALJ also noted that Derryberry's treating physicians had only intermittently observed any objective abnormalities during physical exams, but had frequently noted her normal gait and station, ability to stand and walk on her toes and heels, normal range of motion, normal muscle strength, normal muscle tone and bulk, intact sensation and deep tendon reflexes, and negative straight leg raise. The ALJ did not err in concluding that a lack of objective medical evidence undermined Derryberry's allegation of disabling back pain. See id.; see also Steed v. Astrue, 524 F.3d 872, 875-76 (8th Cir. 2008).

Moreover, the ALJ discredited Derryberry's subjective complaints because they were inconsistent with her self-reported daily activities. See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (an ALJ may discount a claimant's testimony due to inconsistencies in the record). The ALJ found that, contrary to her allegations of severely disabling physical and mental

19

impairments, Derryberry is able to get her sons ready for school; take them to the bus stop; complete household chores, including unloading the dishwasher, laundry, ironing, making her bed, dusting (with a mask), and other cleaning; cook meals daily; read; camp; and fish. Thus, the ALJ did not err by finding that Derryberry's activity level was inconsistent with the debilitating impairments she alleged. See Steed, 524 F.3d at 876 (inconsistencies between claimant's daily activities and the limitations she alleges detract from her credibility). For these reasons, among others, the Court concludes that the ALJ's credibility determination is entitled to deference, as it is supported by good reasons and substantial evidence. See id.; see also Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) (an ALJ's credibility finding is entitled to deference so long as it is support by good reasons and substantial evidence).

## VI. Conclusion

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 30th day of March, 2017.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE